UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JUAN DELLOSANTOS and
ANTONIO DELLOSANTOS,

No.: 04-269S (Lead Case)

VS.

Consolidated with No. 04-318S

CORNELL CORRECTIONS, INC.

**MEMORANDUM OF CORNELL CORRECTIONS OF RHODE ISLAND, INC. AND CORNELL COMPANIES, INC. (WRONGFULLY DESIGNATED AS CORNELL CORRECTIONS, INC.) IN SUPPORT OF ITS REPONSE TO THE COURT'S REPORT AND RECOMMENDATION OF JULY 24, 2006**

On July 24, 2006, Senior Magistrate Judge Jacob Hagopian pursuant to 28 U.S.C §636 (b) (1) (B) rendered a Report and Recommendation on Cornell Corrections of Rhode Island, Inc. and Cornell Companies, Inc. motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). This Court recommended that Cornell Corrections of Rhode Island, Inc. and Cornell Companies, Inc. motion for summary judgment be granted on the grounds of insufficiency of process and insufficiency of service of process. Cornell Corrections of Rhode Island, Inc. and Cornell Companies, Inc. respectfully request that this Court rule on the remainder of the grounds asserted in their motion for summary judgment. Those remaining grounds support the dismissal of the Plaintiffs' claims on the merits and, therefore, are with prejudice, as opposed to a dismissal without prejudice, which results from a dismissal for insufficiency of process and service of process.

Specifically, Cornell Corrections of Rhode Island, Inc. and Cornell Companies, Inc. moved for summary judgment on the additional grounds that the Plaintiffs are precluded from asserting a Bivens claim or a claim under 42 U.S.C. § 1983 against the Cornell

corporations and Plaintiffs fail to state a cognizable claim against any entity that could be subject to suit. Accordingly, Cornell Corrections of Rhode Island, Inc. and Cornell Companies, Inc. respectfully requests that this Court address the above-mentioned grounds in support of its motion for summary judgment with prejudice. Addressing these previously raised grounds with prejudice will foster the efficient use of judicial resources and will provide a disposition of these claims on the merits.

Cornell Corrections of Rhode Island, Inc. ("Cornell of RI") and Cornell Companies, Inc. ("Cornell Companies") (collectively "the Cornell corporations") are entitled to summary judgment as to all of the Plaintiffs' claims in this action. The Plaintiffs' constitutional claims, even if properly asserted against the corporate entity that operates the Donald W. Wyatt Detention Facility, are not actionable. The Plaintiffs cannot assert a Bivens claim or a claim under 42 U.S.C. § 1983 against the Cornell corporations, as they were not acting under color of state or federal law. Furthermore, the Plaintiffs cannot assert a Bivens claim against a private corporation, and the Plaintiffs have failed to identify a corporate policy or custody giving rise to a claim under § 1983. Moreover, Cornell Companies cannot be held liable as a parent corporation for any wrongdoing on the part of Cornell of RI.

Additionally, Plaintiffs fail to state a cognizable claim against any entity which could be subject to suit. "Cornell Corrections, Inc." is not a legal entity against which suit can be brought. The Plaintiffs' claims against it are therefore *void ab initio*.

Accordingly, this Court should grant summary judgment in favor of Cornell of RI and Cornell Companies.

**BACKGROUND**

Plaintiffs, Juan and Antonio Dellosantos, were inmates lawfully confined to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island ("Wyatt") at all times relevant to the complaints. Plaintiffs commenced two separate lawsuits on or about July 1, 2004 asserting claims that their constitutional rights were violated in the wake of a release of carbon monoxide gas at Wyatt on or about August 7, 2001. This Court consolidated these two cases on August 3, 2004.

In their complaints the Plaintiffs state that they were housed at the Wyatt Detention Facility on August 7 and 8, 2001 as federal inmates in the custody of the U.S. Marshals Service. (Complaints ¶ V and at Supplementary Brief ¶ II.) The Plaintiffs allege violations of their Fifth and Eighth Amendment rights associated with a release of carbon monoxide gas at the Wyatt Facility on or about August 7, 2001. Id. at ¶ IV and at Supplementary Brief ¶ I. Specifically, the Plaintiffs' claims involve an allegation that "due to deliberate indifference inflicted by the officers [at Wyatt] plaintiff was ignored, improperly treated, after the exposure [to carbon monoxide gas] which is plaintiff's denial and violation of Plaintiff's fundamental rights of Fifth and Eighth Amendments to the U.S. Constitution." (Complaints ¶ IV.) The Plaintiffs claim that this Court has jurisdiction over this matter pursuant to federal question jurisdiction, "since Plaintiffs were federal detainees housed by the U.S. Marshals Service for court due procedural" at Wyatt when the incident occurred. (Plaintiffs' Counteraffidavit to Defendant's Attorney Objection and Memorandum of Law on Plaintiffs' Misnamed Defendant's Corporation Identity, Submitted: December 15, 2004 ¶ 2; Complaints at Supplementary Brief ¶ II.) Twice in their complaints, the Plaintiffs specifically allege that

"Cornell Corrections, Inc. was acting . . . under the color of federal law when the violations of Plaintiffs' rights occurred." Id. at Supplementary Brief ¶ V.A and B (emphasis added). The Plaintiffs' Complaints designate as named defendant "Cornell Corrections Inc., employed as Wyatt Detention Facility." (Complaints ¶ III.)

On or about July 14, 2004, Juan Dellosantos sent a Summons by certified mail to "Cornell Corrections, Inc. a/k/a Wyatt Detention Facility, 950 High Street, Central Falls, RI 02863." (See Summons and Return Receipt, attached as **Exhibit A**). On or about August 17, 2004, Antonio Dellosantos sent a separate Summons directed to "Wyatt Detention Facility" by regular mail to "Attn Warden, Wyatt Detention Facility, 950 High Street, Central Falls, RI 02863." (See 8/19/2004 Letter with attached Summons, attached hereto as **Exhibit B**). No such legal entities by either of those names exist. (See Affidavit of Wayne Salisbury, attached hereto as **Exhibit C** ¶ 8.) Cornell Corrections of Rhode Island, Inc. operates the Wyatt Facility pursuant to contractual arrangements involving the United States Marshals Service and the facility's owner, the Central Falls Detention Facility Corporation. Id. at ¶ 2. Cornell Corrections of Rhode Island, Inc. is a wholly owned subsidiary of Cornell Companies, Inc. Id. at ¶ 3. Cornell Companies, Inc. was known as Cornell Corrections, Inc. prior to 2000 when it officially changed its name to Cornell Companies, Inc. Id. at ¶ 4; see Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 55 n. 1 (D.R.I. 2003). Thus, both the summonses and Complaints served in this action failed to designate the proper name of a legal entity against which recovery may be had. Magistrate Judge Hagopian correctly found that both Plaintiffs had failed to effectuate service of process.

## ARGUMENT

### I. STANDARD OF REVIEW

"Summary judgment should be granted where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Scully Signal Company v. Joyal, 881 F. Supp. 727, 738 (D.R.I. 1995) (citing Fed. R. Civ. P. 56(c)) (other citations omitted). To overcome a motion for summary judgment under Rule 56(c), the nonmoving party must present facts that show that there is a genuine issue for trial. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "[T]he evidence presented by the nonmoving party cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Id. (internal quotation omitted).

It is well established that even a *pro se* inmate's claims must be comprised of more than speculation, conjecture, or conclusory allegations. Hurney v. Carver, 602 F.2d 993, 995 (1st Cir. 1979). A *pro se* plaintiff's allegations "must be backed up with enough supportive facts to outline the elements of a pleader's claims [and] . . . courts need not conjure up unpleaded facts to support conclusory [allegations]." Id. at 995. "The pleadings are not sufficient where the plaintiff rests on 'subjective characterizations' or unsubstantiated conclusions." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990).

## II. THIS COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF CORNELL OF RI AND CORNELL COMPANIES BECAUSE THE PLAINTIFFS' CONSTITUTIONAL CLAIMS ARE NOT ACTIONABLE

### A. THE PLAINTIFFS CANNOT MAINTAIN AN ACTION UNDER *BIVENS* OR § 1983 BECAUSE THE CORNELL CORPORATIONS DID NOT ACT UNDER COLOR OF FEDERAL OR STATE LAW FOR PURPOSES OF CONSTITUTIONAL LIABILITY

The Plaintiffs used a form titled "Form to Be Used by Prisoners in Filing a Complaint Under the Civil Rights Act, 42 USC § 1983" in filing their complaints, (see Complaints and attachments titled "Plaintiffs' Supplementary Brief to the Complaint for Damages Caused by Carbon-Monoxide (CO) Gases Exposure Incident Since August 7th & 8th, 2001 at Wyatt Detention Facility, RI 02863"), inferring that the individuals that the Plaintiffs allege violated their civil rights were acting under color of state law. However, the Plaintiffs specifically and repeatedly claim that the named defendants were "acting . . . under authority of federal law" when the Plaintiffs' rights were purportedly violated. (Supplementary Briefs to the Complaints ¶¶ V.A and B.) Therefore, the Plaintiffs are asserting claims pursuant to the United States Supreme Court decision in Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). The Plaintiffs, however, cannot prevail on their constitutional claims, because the Cornell corporations did not act under color of federal or state law.

Constitutional liability does not automatically attach to a private party performing a governmental function. In fact, the only time liability attaches to a private party performing a governmental function is when "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (emphasis added). In Richardson v. McKnight, 521 U.S. 399, 413 (1997), the United States Supreme Court held "that private prison guards, unlike those who work for the government, do not enjoy immunity from suit in a § 1983 case," but expressly left undecided the issue of whether those private employees "actually acted 'under color of state law.'"[1] Instead, the Richardson Court held that the "under color of law" determination must be made pursuant to its analysis in Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982). Therefore, the

Lugar analysis is determinative of whether in this case the Cornell corporations acted under color of state or federal law, and not the mere fact that they operate a correctional facility.[2]

The Cornell corporations cannot be considered governmental actors under the analysis articulated in Lugar. In Lugar, the Supreme Court set forth a two-part analysis. First, the deprivation must be caused by the exercise of a right or privilege created by the government or by a rule of conduct imposed by the government or by a person for whom the government is responsible. Lugar, 457 U.S. at 936. Second, the party charged with the deprivation must be a person who may fairly be said to be a government actor, because he is in fact a government official, because he has acted together with, or has obtained significant aid from, government officials or because his conduct is otherwise chargeable to the government. Id. Where the conduct of a private party alleged to violate a constitutional right cannot be ascribed to a decision by a governmental entity, the conduct cannot be considered governmental action in satisfaction of the first part of this analysis. Id. at 937-38 (citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 177 (1972)). Plaintiffs fail to demonstrate how any of the alleged conduct giving rise to their claims is a result of any decision by a governmental entity. Accordingly, the alleged unconstitutional conduct is not attributable to the federal or state government and does not provide a basis for Plaintiffs' constitutional claims against Cornell of RI and Cornell Companies.

---

1 No Bivens claims were asserted in Richardson v. McKnight.

2 The standards applicable to determining action under color of state law for § 1983 liability are interchangeable with those applicable to determining action under color of federal law for Bivens liability. See Morast v. Lance, 807 F.2d 926, 931 (11th Cir. 1987) ("Because the concept of action under color of federal law for purposes of a Bivens action is almost identical to the doctrine of action under color of state law for purposes of a § 1983 action, we will apply the concepts of state action to [plaintiff's] claim[s]."); Kitchens v. Bowen, 825 F.2d 1337, 1340 (9th Cir. 1987)("[T]he standards utilized to find federal action . . . are identical to those employed to detect state action.")(citation and quotation marks omitted).

As for the second prong of the Lugar analysis, three tests or standards have been enunciated for determining whether private conduct is properly chargeable to the government: the "public functions test," the "symbiotic relationship test," and the "nexus" test. Rodriguez-Garcia v. Davila, 904 F.2d 90, 96-99 (1st Cir. 1990). The Defendants are not governmental actors under any of these tests.

**a. Public Functions Test**

When analyzing the public functions test, the Supreme Court has explained that:

> [O]ur holdings have made clear that the relevant question is not simply whether a private group is serving a [public function.] We have held that the question is whether the function performed has been 'traditionally the exclusive prerogative of the State.

Rodriguez-Garcia v. Davila, 904 F.2d at 98 (quoting Rendall-Baker v. Kohn, 457 U.S. 830, 842 (1982))(emphasis in original). The United States Supreme Court has expressly stated that "correctional functions have never been exclusively public . . . ." Richardson v. McKnight, 521 U.S. at 405 (emphasis added). The Supreme Court in Richardson v. McKnight went on to explain that private contractors have been heavily involved in prison management throughout our nation's history. Id. at 405-06. Consequently, Cornell of RI and Cornell Companies have not been performing a traditional public function exclusively reserved to the government. Therefore, the delegation of the task of prison management to a private party does not satisfy the "public functions test" because the requisite "exclusivity" element is lacking.

Admittedly, only the government has the power to sentence a person to a term of imprisonment and that authority cannot be delegated to private parties. But, the actual duty of running a correctional facility to keep that same person incarcerated can be delegated to private parties and has been since the 18th century. Richardson v. McKnight, 521 U.S. at 405. Thus, the discretionary function of sentencing a person to prison is significantly different than the ministerial function of operating a correctional facility and only the latter

may be delegated to private parties. Therefore, the delegation of prison management tasks -- providing inmates with food, shelter, and medical attention while maintaining order -- does not metamorphose private prison employees into governmental officials.

In fact, the ministerial function of operating a correctional facility is no more a governmental function than is a storekeeper detaining a customer for suspicion of shoplifting. Pursuant to R.I. Gen. Laws § 11-41-21, merchants are empowered to detain citizens suspected of shoplifting. This statutory authority does not convert private merchants into state actors for purposes of constitutional liability. Suspected shoplifters who sue merchants for violating their rights must do so under state common-law principles, not pursuant to 42 U.S.C. § 1983.

### b. Nexus Test

Under the nexus test, "the provision of services to a [governmental] entity does not establish [governmental] control, even where, as here, the private contractor's sole business is the performance of public contracts." Rodriguez-Garcia v. Davila, 904 F.2d 90, 96-97 (1st Cir. 1990). The test requires that "'the challenged action of the regulated entity . . . may be fairly treated as that of the state itself . . . only when it can be said that the state is *responsible* for the specific conduct of which the plaintiff complains.'" Id. (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (italics in original, emphasis added). "A state normally can be responsible for a private decision only when it has exercised power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed that of the state." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

The Wyatt facility is owned by the Central Falls Detention Facility Corporation ("CFDFC"). Huguenin v. Ponte, 29 F. Supp. 2d 57, 60 (D.R.I. 1998). The CFDFC contracted with the United States Marshals Service to provide a correctional facility in Rhode

Island for the purpose of housing federal detainees and inmates. Id. The CFDFC then contracted with Cornell of RI to operate the Wyatt facility and employ the correctional and administrative staff at that facility. Id. Thus, neither Cornell of RI nor Cornell Companies has contracted with the federal or state government. Therefore, it cannot be said that the federal or state government is responsible for the specific conduct of which the Plaintiffs complain.

Moreover, Plaintiffs fail to allege any facts sufficient to establish that the federal or state government is responsible for the conduct which gives rise to their claims. Plaintiffs have failed to specify what power the federal or state government has exercised, or what significant encouragement either provided, to enable this Court to find that the alleged misconduct was the choice of the government. Accordingly, this Court should find that an insufficient nexus exists to find that either of the Cornell corporations acted under color of federal or state law.

**c. Symbiotic Relationship Test**

Under the symbiotic relationship test, the acts of a private party are attributable to the government "only if the government 'has so far insinuated itself into a position of interdependence with the [private party] that it must be recognized as a joint participant in the challenged activity . . . .'" Rodriguez-Garcia v. Davila, 904 F.2d 90, 96-97 (1st Cir. 1990) (quoting Burton v. Wilmington Packing Authority, 365 U.S. 715, 725 (1961)). A key factor in determining whether such a symbiotic relationship exists is whether the government shared in any profits made by the private entity. Id. In essence, the test can be considered as a determination of whether the private entity is an *alter ego* of the government. Id. at 98-99. Other factors to be considered are whether the private entity performs a government function,

whether it functions with substantial autonomy, to what extent it is financed independently of the government treasury and if a judgment sought to be entered against it would be satisfied out of the government treasury. Id. at 99.

Plaintiffs fail to allege any facts sufficient to establish the requisite interdependence between the federal or state government and the Cornell corporations. In addition, no federal or state official participates in the day-to-day activities and efforts involved in housing detainees and inmates at the Wyatt facility and no judgment entered against Cornell of RI or Cornell Companies would be satisfied out of the government treasury. Thus, there is no interdependence between the federal or state government and the Cornell corporations sufficient to create a symbiotic relationship. Accordingly, neither Cornell of RI nor Cornell Companies acted under color of federal or state law and, therefore, neither is subject to Plaintiffs' constitutional claims.

**d. This Court's Prior Decision in the *Sarro* Case is Not Binding Here**

In Sarro v. Cornell Corrections, Inc., 248 F. supp. 2d 52 (D.R.I. 2003), Chief Judge Torres held that the operation of a prison is a governmental function, thus subjecting private operators of prisons to constitutional liability. Id. at 60-61. However, that conclusion is not binding in this case and resulted from a misapplication of relevant law.

First, "District Court decisions do not establish the law of the circuit, or, indeed, do they even establish the law of the district." Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 101 (1st Cir. 2002)(quoting In re Executive Office of President, 215 F.3d 20, 24 (D.C. Cir. 2000))(emphasis added). Accordingly, this Court is not bound by any of the decisions rendered on issues relevant to this case by any United States District Judge of the District of Rhode Island in another case.

Second, this Court's analysis in the Sarro case involved a misapplication of relevant law. In Fletcher v. Rhode Island Hospital Trust National Bank, 496 F.2d 927 (1st Cir. 1974), the Court of Appeals for the First Circuit held that "[w]hile federal officers may, at times, be subject to suit for unconstitutional behavior, [citing Bivens], there is no cause of action against private parties acting under color of federal law or custom." 496 F.2d at 932 n.8 (emphasis added). This controlling and unequivocal language makes clear that private parties are not subject to Bivens actions brought in the district courts of the First Circuit. The Court in Sarro, however, held otherwise, and based this holding on an assumption that the First Circuit implicitly overturned its decision in Fletcher in its decision in Gerena v. Puerto Rico Legal Services, Inc., 697 F.2d 447 (1st Cir. 1983), by recognizing that a private party acting under color of federal law may be liable under Bivens. 248 F. Supp. 2d at 58. However, several other courts have recognized Fletcher's refusal to allow Bivens actions against private parties as controlling authority in this jurisdiction. See, e.g., DeVargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 720 (10th Cir. 1988); Morast v. Lance, 807 F.2d 926, 931 (11th Cir. 1987); Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1338 n.16 (9th Cir. 1987); Stevens v. Morrison-Knudsen Saudi Arabia Consortium, 576 F. Supp. 516, 520-21 (D. Md. 1983); Kelley v. Action for Boston Community Development, Inc., 419 F. Supp. 511, 525 (D. Mass. 1976). But see Heinrich v. Sweet, 62 F. Supp. 2d 282 (D. Mass 1999)[3].

Furthermore, in Gerena, the plaintiff alleged that he was dismissed from his position as Deputy Director of the Puerto Rico Legal Services Center in violation of his due process

3 Despite acknowledging that other courts have recognized Fletcher as binding precedent in the First Circuit, the United States District Court for the District of Massachusetts construed Fletcher's express pronouncement as dicta and purportedly relied upon a "consensus of the majority of the other Circuit Courts of Appeal" in holding that "Bivens does extend to actions against private parties who act under color of federal law." Heinrich v. Sweet, 62 F. Supp. 2d 282, 306-7 (D. Mass. 1999). Although the Court referred to a "majority" consensus among the circuits, only four of the circuits had permitted Bivens claims against private parties. *See* id. at 306. Furthermore, as conclusively demonstrated hereafter, the Court improperly interpreted Gerena v. Puerto Rico Legal Servs., Inc., 697 F.2d 447 (1st Cir. 1983), as approval by the First Circuit that Bivens actions could lie against private parties. *See* id. at 306.

rights under the Fifth and Fourteenth Amendments. Gerena, 697 F.2d at 448. The court found that plaintiff failed to "demonstrate that [defendant's] discharge of him from his position as Deputy Director can be fairly attributed to the federal government." Id. at 452. Hence, plaintiff's Bivens claims were dismissed. Id. However, the Gerena court made no mention of Fletcher v. Rhode Island Hospital Trust National Bank and failed to even acknowledge the issue of whether there is a cause of action against a private party acting under color of federal law or custom. Furthermore, neither the issue nor the Fletcher decision was raised by the parties in their briefs to the First Circuit Court of Appeals in the Gerena case. (See Gerena Briefs, attached hereto as **Exhibit D**).

It is well-settled that a "court is not bound by precedent where the issue is not raised by counsel or discussed in the opinion of the court." Dynacraft Industries, Inc. v. United States, 118 F. Supp. 2d 1286, 1293 n.18 (Ct. Int'l. Trade 2000)(citing United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952)). "When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises." National Cable Television Ass'n v. American Cinema Editors, Inc., 937 F.2d 1572, 1581 (Fed. Cir. 1991)(citation omitted). The issue of whether a private party may be sued for unconstitutional behavior while acting under color of federal law or custom was not raised by the parties or addressed by the court in Gerena. Thus, Gerena is not precedent to be followed on that precise issue. Accordingly, Fletcher remains binding precedent in this circuit for the rule that a private party may not be sued for unconstitutional behavior while acting under color of federal law or custom. The Court's conclusion to the contrary in Sarro therefore was misinformed.

Furthermore, the Court in Sarro, in finding that the defendants qualified as federal actors under the public function test, discounted the critical "exclusivity" element of the traditional public functions test. 248 F. Supp. 2d 52. When analyzing the public functions test, the Supreme Court has explained that:

> [O]ur holdings have made clear that the relevant question is not simply whether

> a private group is serving a [public function.] We have held that the question is whether the function performed has been 'traditionally the exclusive prerogative of the State.

Rodriguez-Garcia v. Davila, 904 F.2d at 928 (quoting Rendall-Baker v. Kohn, 457 U.S. 830, 842 (1982))(emphasis in original). The United States Supreme Court has expressly stated that "correctional functions have never been exclusively public . . . ." Richardson v. McKnight, 521 U.S. at 405 (emphasis added). The Supreme Court in Richardson v. McKnight went on to explain that private contractors have been heavily involved in prison management throughout our nation's history. Id. at 405-06. Consequently, the private defendants in the instant case have not been performing a traditional public function exclusively reserved to the government. Therefore, the delegation of the task of prison management to a private party does not satisfy the "public function test" because the requisite "exclusivity" element is lacking.

The Court in Sarro relied on the United States Supreme Court opinion in Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614 (1991), in holding that the "exclusivity" element of the public functions test is no longer a prerequisite to a finding of government function. 248 F. Supp. 2d at 60. As stated above, there are three tests or standards that have been enunciated for determining whether private conduct is properly chargeable to the government. Rodriguez-Garcia v. Davila, 904 F.2d at 96-99. The Edmonson Court did not base its holding upon the "public functions test" but instead, relied upon the "nexus" or interdependence between the litigant, who exercises a peremptory challenge, and the court, who must discharge the prospective juror. Edmonson, 500 U.S. at 624.[4] Justice O'Connor,

---

4 The Edmonson Court also explained the basis of its holding as follows:

> Our precedents establish that, in determining whether a particular action or course of conduct is governmental in character, it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority . . . . Based on our application of these three principles to the circumstances here, we hold that the exercise of peremptory challenges by the defendant in the District Court was pursuant to a course of state action.

dissenting in Edmonson, also noted that the majority's finding of state action rested "on two empirical assertions. First, that private parties use peremptory challenges with the 'overt, significant participation of the government.' Second, that the use of a peremptory challenge by a private party 'involves the performance of a traditional function of the government.'" Edmonson, 500 U.S. at 633 (J. O'Connor, dissenting). It is thus clear that Edmonson was not decided upon the "public functions test." Therefore, the Sarro Court's interpretation of Edmonson abolishing the "exclusivity" element of the "public functions test" is not persuasive.

Finally, the Court in Sarro discarded the United States Supreme Court's finding in Richardson, 521 U.S. at 405, that "correctional functions have never been exclusively public," by explaining that this finding was made in the context of analyzing whether private prison guards were entitled to qualified immunity and not in the context of analyzing whether they are governmental actors subject to constitutional liability. 248 F. Supp. 2d at 60. The Supreme Court's finding of non-exclusivity, however, was based upon a very extensive historical analysis of correctional functions and qualified as a finding of fact. See Richardson, 521 U.S. at 405. The context within which this finding was made is irrelevant; it nevertheless qualifies as a final determination by the Supreme Court binding this Court. This Court's failure to acknowledge this finding of fact in Sarro therefore was erroneous.

**B. IF THIS COURT FINDS THAT OPERATION OF THE WYATT FACILITY IS A GOVERNMENTAL FUNCTION, WHICH IT SHOULD NOT, THIS COURT SHOULD FIND THAT IT WAS OPERATED UNDER COLOR OF FEDERAL LAW AND THAT THE PLAINTIFFS' CLAIMS CAN ONLY BE ASSERTED PURSUANT TO *BIVENS***

In their complaints the Plaintiffs state that they were housed at the Wyatt Detention Facility on August 7 and 8, 2001 as federal inmates in the custody of the U.S. Marshals

Service. (Complaints ¶ V and at Supplementary Brief ¶ II.) The Plaintiffs allege violations of their Fifth and Eighth Amendment rights associated with a release of carbon monoxide gas at the Wyatt Facility on or about August 7, 2001. Id. at ¶ IV and at Supplementary Brief ¶ I. The Plaintiffs claim that this Court has jurisdiction over this matter pursuant to federal question jurisdiction, "since Plaintiffs were federal detainees housed by the U.S. Marshals Service for court due procedural" at Wyatt when the incident occurred. (Plaintiffs' Counteraffidavit to Defendant's Attorney Objection and Memorandum of Law on Plaintiffs' Misnamed Defendant's Corporation Identity, Submitted: December 15, 2004 ¶ 2; Complaints at Supplementary Brief ¶ II.) Twice in their complaints, the Plaintiffs specifically allege that "Cornell Corrections, Inc. was acting . . . under the color of federal law when the violations of Plaintiffs' rights occurred." Id. at Supplementary Brief ¶ V.A and B (emphasis added). All of the Plaintiff's claims as pled therefore arise under federal law.

Moreover, in Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52 (D.R.I. 2003), Chief Judge Torres of this Court held that a plaintiff detainee at the Wyatt Detention Facility could not maintain § 1983 claims against the Cornell corporations because they act under color of federal, and not state, law. This is because "the authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government." Id. at 64. Chief Judge Torres reasoned that:

> Sarro and the other individuals incarcerated at Wyatt had been arrested by federal law enforcement agents and charged with federal crimes. They were being detained under authority of the United States government pending disposition of the charges against them. By law, they were in the custody of the United States Marshal who exercised ultimate authority over them. The power to detain them was derived solely and exclusively from federal authority and the defendants, in effect, acted as the Marshal's alter ego. The fact that the Marshal temporarily delegated the task of detaining those

---

Edmonson, 500 U.S. at 621-22 (emphasis added).

> prisoners to the defendants did not convert that detention into anything other than an exclusively governmental function.

Id. at 61 (internal citations omitted). Thus, if operation of the Wyatt Facility is found to be an exercise of governmental authority, it must be considered an exercise under color of federal law and claims of constitutional violations can only be asserted pursuant to Bivens, 403 U.S. 388. See Sarro, 248 F. Supp. 2d at 63.

Although Judge Lagueux of this Court stated in dicta in Lacedra v. Donald W. Wyatt Detention Facility, 334 F. Supp. 2d 114 (D.R.I. 2004), that the Cornell defendants "acted under color of state law when they carried on the traditional public function of prison operations at the Wyatt Facility," id. at 140, the Court misapplied the law in that case.

Constitutional liability attaches to a private party performing a governmental function only when "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (emphasis added). Thus, it is the conduct of which the plaintiff complains that must emanate from state law or authority. None of the conduct alleged by the Plaintiffs to have caused deprivations of their constitutional rights is attributable to the State of Rhode Island or was undertaken under color of its law. Nowhere do the Plaintiffs allege that the conduct of which they complain was pursuant to or under color of any state law. In fact, the Plaintiffs specifically allege that "Cornell Corrections, Inc." was acting "under the color of federal law when the violations of Plaintiffs' rights occurred." (Complaints at Supplementary Brief ¶¶ V.A and B.) Plaintiffs' failure to allege any facts demonstrating that the conduct of which they complain was pursuant to any state law precludes any finding that the Plaintiffs have set forth a claim that the Cornell corporations were acting under color of state law.

"A defendant is deemed to have acted 'under color of state law' when he 'exercises power 'possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.'''" Polk County v. Dodson, 454 U.S. 312, 317-18 (1981). Plaintiffs allege that they were incarcerated at the Wyatt facility as "federal inmates," (Complaints at ¶ V) under the custody of the U.S. Marshals Service, id. at Supplementary Brief ¶ II. Thus, they were incarcerated under federal law. Nowhere in the complaints do they allege that they were incarcerated or held under state law.

Furthermore, neither Cornell of RI nor Cornell Companies was clothed with the authority of state law. Were the Wyatt facility privately owned and operated, Plaintiff's only avenue of relief would still be pursuant to Bivens, assuming the requisite government nexus existed. It is of no consequence that the Rhode Island General Assembly statutorily created a detention facility corporation to build a detention facility to house federal and/or state inmates. Although the Wyatt facility is owned by Central Falls Detention Facility Corporation, an instrumentality of the City of Central Falls pursuant to state enabling legislation, the conduct which the Plaintiffs claim deprived them of constitutional rights has nothing to do with the ownership of the Wyatt facility. Rather, the Plaintiffs complain of the conditions of their confinement as federal detainees in the custody of the United States Bureau of Prisons and the Federal Marshals Service. Plaintiffs were not confined by virtue of any state law or authority nor did they even allege that fact. Thus, the conduct they complain of, the management and conditions of their confinement, is in no way attributable to the State of Rhode Island. Accordingly, neither Cornell of RI nor Cornell Companies can be considered to have taken any action pursuant to state law.

Accordingly, the Plaintiffs' constitutional claims are properly construed not as claims pursuant to 42 U.S.C. § 1983 but rather as Bivens claims.

### C. THE PLAINTIFFS' *BIVENS* CLAIMS MUST FAIL BECAUSE SUCH CLAIMS CANNOT BE ASSERTED AGAINST PRIVATE CORPORATIONS

Even if the Plaintiffs had properly named Cornell Corrections of Rhode Island, Inc., instead of "Cornell Corrections Inc." as the entity which operates Wyatt, and even if this Court finds that Cornell of RI acted under color of federal law in operating the Wyatt Facility, the Plaintiffs' Bivens claims must fail. In Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), the United States Supreme Court held that Bivens claims may be asserted only against individual officers who commit unconstitutional acts, and not against their employer corporations. Id. at 71-72. This is because "[t]he purpose of Bivens is to deter individual federal officers from committing constitutional violations. . . For if a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury." Id. at 70-71. Thus, in Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 62-63 (D.R.I. 2003), this Court held that Malesko was dispositive of the plaintiff's Bivens claims against the corporate defendant: "while a prisoner at a federal prison can bring a Bivens action against an individual officer, he 'may not bring a Bivens claim against the officer's employer.'" Id. at 62-63 (quoting Malesko, 534 U.S. at 71-72).

In this case, the Plaintiffs have not named any individual defendants. (See Complaints.) While the Plaintiffs have alleged claims in their Complaints involving correctional officers and Wyatt facility staff, the Plaintiffs have failed to join any of these individuals as defendants. This is contrary to the purpose of Bivens and has been expressly

prohibited by this Court and by the Supreme Court of the United States. Accordingly, the Cornell corporations are entitled to summary judgment.

### D. IF THIS COURT FINDS THAT THE PLAINTIFF'S CLAIMS ARE PROPERLY BROUGHT PURSUANT TO 42 U.S.C. § 1983, WHICH IT SHOULD NOT, THE PLAINTIFFS' CLAIMS MUST FAIL, AS THERE IS NO *RESPONDEAT SUPERIOR* LIABILITY UNDER § 1983

The United States Supreme Court and this Court have consistently held that claims brought pursuant to 42 U.S.C. § 1983 cannot be predicated upon the doctrine of *respondeat superior*. Board of County Commissioners of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-404 (1997) (rehearing denied, 520 U.S. 1283 (1997)); Monell v. Department of Social Services, 436 U.S. 658, 690-692 (1978); Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 63 (D.R.I. 2003). A governing body may not be held liable under § 1983 solely because it employs a tortfeasor. Brown, 520 U.S. at 403 (citing Monell, 436 U.S. at 692). This is because "[s]ection 1983 permits an individual whose constitutional rights are violated to recover damages from the 'person' responsible for the violation." Sarro, 248 F. Supp. 2d at 63 (quoting 42 U.S.C. § 1983). Accordingly,

> in Monell and subsequent cases, [the United States Supreme Court] ha[s] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury. Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.

Brown, 520 U.S. at 403-404 (internal citations omitted); see also Gabriel v. Corrections Corporation of America, 211 F. Supp. 2d 132, 138 (D.D.C. 2002) (stating that the plaintiff, to state a claim under § 1983 against the corporate defendant, must allege that his injuries

occurred as a result of a specific corporate policy or custom). "Where a plaintiff fails to allege the existence of any policy or custom that could have arguably violated his rights, dismissal is proper." Gabriel, 211 F. Supp. 2d at 139 (citing Polk County v. Dodson, 454 U.S. 312, 326-327 (1981)).

In the present case, the Plaintiffs have failed to plead sufficient facts giving rise to a claim against the Cornell corporations under 42 U.S.C. § 1983. The Plaintiffs have failed to allege that their constitutional rights were violated as a result of any policy or custom of Cornell of RI or Cornell Companies. (See Complaints.) In fact, the Plaintiffs' detailed allegations preclude even an inference that the alleged wrongful conduct of which they complain was the result of any corporate policy. Instead, the allegations in the complaints detail alleged wrongful conduct that can only be that of individuals.

The Plaintiffs' claims involve an allegation that "due to deliberate indifference inflicted by the officers [at Wyatt] plaintiff was ignored, improperly treated, after the exposure [to carbon monoxide gas] which is plaintiff's denial and violation of Plaintiff's fundamental rights of Fifth and Eighth Amendments to the U.S. Constitution." (Complaints ¶ IV.) Specifically, the Plaintiffs allege that while working in the Wyatt Facility kitchen on August 7, 2001, the Plaintiffs complained of nausea and headaches to their supervisor, Officer Louis, who "deliberately and cruelly brushed-off" the complaints "and perhaps this Officer Louis did absolutely nothing to follow-up on [these complaints]." (Complaints at Supplementary Brief ¶ IV.1.) Such alleged conduct could only be attributed to the officer involved, and it is not alleged that Cornell of RI nor Cornell Companies authorized him or her to engage in such conduct. The Plaintiffs further allege that "Sergeant Troy, the officer at Wyatt Detention Facility, wrongfully accused plaintiff and all the other inmates of smoking

marijuana and drinking homemade liquor." (Complaints at Supplementary Brief ¶ IV.2.) Any such wrongful accusation would constitute an individual act of volition on the part of the officer involved and could not be attributed to the Cornell corporations. The Plaintiffs' third claim consists of an allegation that, while at the hospital, the Plaintiffs spent a night in excruciating pain when the supervising officers refused to loosen their handcuffs. (Complaints at Supplementary Brief ¶ IV.3.) This alleged conduct on the part of the correctional officers could only be attributed to them individually, as the Plaintiff has not alleged that either Cornell of RI or Cornell Companies had any involvement whatsoever in such conduct. Finally, the Plaintiffs allege that the medical staff at Wyatt ignored their requests for follow-up treatment after their alleged exposure to carbon monoxide gas. (Complaints at Supplementary Brief ¶ IV.6.) Such conduct could only be attributed to the individual staff members at Wyatt and could not be attributed to the Cornell corporations.

Since the Plaintiffs' allegations preclude any inference that the alleged wrongful conduct of which they complain was a result of any policy or custom of the Cornell corporations, the Plaintiffs cannot maintain an action under 42 U.S.C. § 1983. This Court should therefore grant summary judgment in favor of Cornell of RI and Cornell Companies.

## III. CORNELL COMPANIES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT CANNOT BE HELD LIABLE FOR THE ACTIONS OF ITS SUBSIDIARY

Even if this Court finds that there is a genuine issue of material fact concerning liability on the part of Cornell of RI, Cornell Companies is entitled to summary judgment on all the Plaintiffs' claims. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."

United States v. Bestfoods, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). "Thus, it is hornbook law that the exercise of the control which stock ownership gives to the stockholders will not create liability beyond the assets of the subsidiary." Id. (internal quotation marks omitted); see also Scully Signal Company v. Joyal, 881 F. Supp. 727, 736 (D.R.I. 1995) (citing Vennerbeck & Clase Co. v. Juergens Jewelry Co., 53 R.I. 135, 138 (1933)) ("Generally, a corporation is treated as a separate legal entity and its liabilities are not attributable to its owners and officers.")

Cornell of RI operates the Wyatt Facility pursuant to a contract with the Central Falls Detention Facility Corporation. (See **Exhibit C**, Affidavit of Wayne Salisbury ¶ 2.) Cornell Companies is not a signatory to that contract. Id. at ¶ 3. The personnel that operate the Wyatt Facility are all employees or employees of subcontractors of Cornell of RI, and Cornell Companies is merely the corporate parent to its wholly owned subsidiary, Cornell of RI. Id. at ¶ 7, 3. Thus, Cornell Companies cannot be liable for any claim that employees of Cornell of RI violated the Plaintiffs' rights. Accordingly, summary judgment should enter in its favor.

## IV. THIS COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF CORNELL OF RI AND CORNELL COMPANIES BECAUSE THE PLAINTIFFS HAVE FAILED TO STATE A COGNIZABLE CLAIM AGAINST ANY LEGAL ENTITY, AND HAVE FAILED TO PERFECT SERVICE OF PROCESS OF THAT ACTION

Even if the Plaintiffs' claims would be otherwise viable, this Court should grant summary judgment in favor of Cornell of RI and Cornell Companies because the Plaintiffs have failed to state a cognizable claim against any entity which could be subject to suit. Furthermore, the Plaintiffs' purported service of that action upon Cornell of RI and Cornell

Companies did not comply with Rule 4 of the Federal Rules of Civil Procedure and therefore failed to bring those entities within this Court's jurisdiction.

### A. THE ACTION AGAINST "CORNELL CORRECTIONS INC." IS VOID *AB INITIO* AND SERVICE OF THAT ACTION IS INEFFECTUAL

In this case the Plaintiffs have failed to serve sufficient process upon either Cornell of RI or Cornell Companies. The Plaintiffs' claims against "Cornell Corrections Inc." are void *ab initio*, as no such legal entities exist. To the extent that the Plaintiffs intended to name the Donald W. Wyatt Detention Facility as a defendant, such a claim would also be void, since "Donald W. Wyatt Detention Facility" is merely the name of a building and is not a legal entity that can be subject to suit. See Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 62 n. 2 (D. R.I. 2003) ("[B]ecause Wyatt is not a legal entity, the claims against it should be dismissed for that reason").

> A civil action can be maintained only against a legal person, i.e., a natural person or an artificial or quasi-artificial person, a non-entity is incapable of suing or being sued. Where a suit is brought against an entity which is legally non-existent, the proceeding is void *ab initio* and its invalidity can be called to the attention of the court at any stage of the proceeding. The common-sense rationale of this rule is that courts sit to settle disputes between existing parties and when the defendant is not a legal person no lawful judgment can be rendered against such a non-entity. Accordingly, it is a corollary to this rule that the objection that a plaintiff or defendant is non-existent is not subject to waiver, as in the case of misnomer or lack of legal capacity, because the defect is jurisdictional.

Oliver v. The Swiss Club Tell, (222 Cal. App. 2d 528, 537-38) (Cal. App. Ct. 1963) (citations omitted). See also, Jenkins v. The Estate of Nicholas A. Thomas, 800 P.2d 1358, 1359 (Col. App. Ct. 1990) (holding that actions may only be brought against legal entities, to whom judgment may be awarded or against whom they may be enforced); Patterson v. V &

M Auto Body, 589 N.E.2d 1306, 1309 (Ohio 1992)("If a defendant in a lawsuit is not an actual or legal entity, then any judgment rendered against that entity is void.")

Further, where an action should have been brought against a separate and distinct entity other than the one named as a defendant, there is no misnomer. "Rather, there is a mistake in identity and the wrong party is under no obligation to correct that mistake." Matsushita Electric Corporation of American v. McAllen Copy Data, Inc., 815 S.W.2d 850, 852 (Texas App. Ct. 1991). Therefore, the summonses mailed to the Wyatt Facility which designated "Cornell Corrections, Inc." as the named defendant is not effective against Cornell Corrections of Rhode Island, Inc. or Cornell Companies, Inc., and it does not provide the Court with jurisdiction over either of those legal entities. The effect of naming and serving the wrong defendant who may be related to the correct defendant may toll the statute of limitation, but that misnomer of party does not act to substitute the correct defendant for the incorrect one. Daca, Inc. v. Commonwealth Land Title Insurance Co., 822 S.W.2d 360, 363 (Texas App. Ct. 1993) (emphasis added); see also Lewis v. The West Side Trust and Savings Bank, 36 N.E.2d 573, 574-75 (a plaintiff cannot give the court jurisdiction over the person by having service of a summons and complaint made upon that person when they are not named as a defendant in the complaint).

Due process prevents the entry of judgment against any person designated by a fictitious name, as a fictitious person is not a party to a suit. Bencivenga v. J. J. A. M. M., Inc., 609 A.2d 1299, 1303 (N.J. Super. 1992). "The person plaintiff identifies as a fictitious defendant only becomes a party to the suit when the defendant's true name is substituted in an amended complaint and service is effected. It is at the point of service on the true

defendant that a court gains jurisdiction consonant with due process, and a person becomes a party to a suit." Id. (emphasis added).

If a plaintiff fails to perfect service of process on a defendant, the Court has no jurisdiction over that defendant. Brooks v. Richardson, 478 F.Supp. 793, 795 (S.D.N.Y. 1979). Here, the Plaintiffs have asserted claims and attempted to effect process on non-existent entities. Neither those claims nor that process have any legal effect. Because the Plaintiffs have asserted no claim against any identifiable legal entity or person, this action should be dismissed on the merits.

## CONCLUSION

For all of the above stated reasons, summary judgment should enter in favor of Cornell of RI and Cornell Companies with prejudice, in addition to the reasons set forth in the July 24, 2006 Report and Recommendation.

Cornell Corrections of Rhode Island, Inc. and
Cornell Companies, Inc.,
By their attorneys,

/s/ Dennis T. Grieco II
Dennis T. Grieco, II #5057
GIDLEY, SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644 - Fax: 331-9304

**CERTIFICATION**

Juan De Los Santos, *Pro se*
Fed. Reg. No. 16686-265
FCI – Loretto
P.O. Box 1000
Loretto, PA 16686

Antonio De Los Santos, *Pro se*
Fed. Reg. No. 58734-053
FCI – McKean
P.O. Box 8000
Bradford, PA 16701

I hereby certify that on the ___ day of _______________, 2005, I mailed a true copy of the within to the above-named individuals, as above.

___________________________

# UNITED STATES DISTRICT COURT

District of RHODE-ISLAND

DELLOSANTOS, JUAN.

PLAINTIFF
V.

CORNELL CORRECTIONS INC.,
AKA: WYATT DETENTION FACILITY,

DEFENDANT

## SUMMONS IN A CIVIL CASE

CASE NUMBER: CV04 -269S.

TO: (Name and address of Defendant)

CORNELL CORRECTIONS INC.,
aka: WYATT DETENTION FACILITY,
950 HIGH STREET, CENTRAL FALLS, RI. 02863

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

ı answer to the complaint which is served on you with this summons, within ______________ days after service 'this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you r the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the erk of this Court within a reasonable period of time after service.

______________________ ______________________
ERK DATE

______________________
ı DEPUTY CLERK

EXHIBIT
tabbies
A

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE JULY 14th, 2004. |
|---|---|
| NAME OF SERVER *(PRINT)* DELLOSANTOS, JUAN | TITLE PLAINTIFF. |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: __________

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: __________

☐ Returned unexecuted: __________

☒ Other (specify): U.S. CERTIFIED MAIL # 7004 1160 0007 1714 5042.

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| U.S. CERTIFIED MAIL | RETURNED POSTAGE PAID. | $7.40 |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on JULY 14th, 2004.
Date

Juan De Los Santos
*Signature of Server*

DELLOSANTOS, JUAN # 16686-265.
FEDERAL CORRECTIONAL INSTITUTION,
P.O.BOX. 1000, LORETTO, PA. 15940.
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

CORNELL CORRECTIONS INC. RI.

| | |
|---|---|
| Postage | $ 7.40 |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.40 |

LORETTO, PA 15940 — JUL 2004 — USPS — Postmark Here — 02863.

7004 1160 0007 1714 5042

Sent To: Dellosantos, Juan 16686-068
Street, Apt. No.; or PO Box No.: Federal Correctional Institution
City, State, ZIP+4: P.O. Box 1000, Loretto, PA 15940

PS Form 3800, June 2002 — See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CORNELL CORRECTIONS INC.,
AKA: WYATT DETENTION FACILITY,
950 HIGH STREET, CENTRAL FALLS,
RI. 02863

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

PAWTUCKET RI — JUL 15 2004 — USPS 02860

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☒ Yes

2. Article Number (Transfer from service label): 7004 1160 0007 1714 5042

PS Form 3811, February 2004 — Domestic Return Receipt — 102595-02-M-1540

**Mr. ANTONIO DELLOSSANTOS**
Registration No. 58734-053

FCI-McKean P.O. Box 8000 Bradford, Pennsylvania 16701

August 19, 2004

Clerk of Court
United States District Court
Office of the Clerk
Providence, Rhode Island 02903-1720

**Re: ANTONIO DELLOSSANTOS v. CORNELL CORRECTION INC.
CIVIL CASE NO. CA 4318 S**

Dear Sir or Madam:

Enlosed herewith please find a copy of the summons served upon the defendant on the above-mentioned matter.

The service date was August 17, 2004. The summons was forwarded via US mails, postage prepaid, addressed as follows:

**Attn** Warden
Wyatt Detention Facility
950 High Street
Central Falls, Rhode Island 02863

Thank you for your attention on this matter.

Sincerely,

Antonio Dellossantos

AD/cjl
Enclosure

EXHIBIT
B

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of Rhode Island

ANTONIO DELLOSSANTOS

V.

CORNELL CORRECTION INC.,
aka: WYATT DETENTION FACILITY

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: CA 4318S

TO: (Name and address of Defendant)

Wyatt Detention Facility
950 High Street
Central Falls, RI 02863

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Antonio Dellossantos
FCI-McKean County
Registration No. 58734-053
P.O. Box 8000
Bradford, Pennsylvania 16701

an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK [signature]

DATE 8/12/04

(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JUAN DELLOSANTOS and
ANTONIO DELLOSANTOS,

VS.

No.: 04-269S (Lead Case)

Consolidated with No. 04-318S

CORNELL CORRECTIONS, INC.

## AFFIDAVIT OF WAYNE SALISBURY

I, Wayne Salisbury, hereby testify and state as follows:

1. I am the Warden at the Donald W. Wyatt Detention Facility.

2. Cornell Corrections of Rhode Island, Inc. operates the Wyatt Facility pursuant to a contract with the Central Falls Detention Facility Corporation ("CFDFC").

3. Cornell Corrections of Rhode Island, Inc. is a wholly owned subsidiary of Cornell Companies, Inc. Cornell Companies, Inc. is not a signatory to the contract between CFDFC and Cornell Corrections of Rhode Island, Inc.

4. Cornell Companies, Inc. was known as Cornell Corrections, Inc. prior to 2000 when it officially changed its name to Cornell Companies, Inc.

5. I am not and never was an officer or a managing or general agent of Cornell Companies, Inc.

6. I am not and never was an agent authorized to receive service of process on behalf of Cornell Companies, Inc.

7. The personnel that operate the Wyatt Facility are all employees of Cornell Corrections of Rhode Island, Inc. or employees of subcontractors of Cornell Corrections of Rhode Island, Inc.

EXHIBIT
tabbies
C

8. No legal entity by the name of "Cornell Corrections Donald W. Wyatt," "Cornell Corrections, U.S.A.," or "Cornell Corrections, Inc." currently exists or has existed since prior to 2000.

Signed under the pains and penalties of perjury.

Wayne Salisbury

Dated: 10/31/05

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| | |
|---|---|
| JULIO C. LOPEZ GERENA, Plaintiff-Appellant | NO. 82-1474 |
| Vs. | |
| PUERTO RICO LEGAL SERVICES, INC., Defendant-Appellee. | |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

-----------

BRIEF FOR APPELLANT

-----------

JOSE E. FERNANDEZ SEIN
Attorney for Defendant-Appellee
P.O. Box 9949
San Juan, Puerto Rico 00908

A. J. AMADEO MURGA
Attorney for Plaintiff-Appellant
1105 Banco Popular Center
Hato Rey, Puerto Rico 00918

EXHIBIT
D

TABLE OF CONTENTS


| | | PAGES |
|---|---|---|
| I. | STATEMENT OF ISSUES | 1 |
| II. | STATEMENT OF THE CASE | 1-3 |
| III. | STATEMENT OF FACTS | 3-7 |
| IV. | ARGUMENT | 7 |
| | 1. WHETHER THE DISTRICT COURT ERRED IN VACATING THE JUDGMENT AND IN DISMISSING THE COMPLAINT ON THE BASIS OF LACK OF JURISDICTION AND IN FAILING TO FIND THAT DEFENDANT-APPELLEE'S ACTS IN DISMISSING PLAINTIFF-APPELLANT WITHOUT DUE PROCESS WERE GOVERNMENTAL ACTIONS AND THUS SUBJECT TO THE STRICTURES OF THE FIFTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES. | 7-16 |
| | 2. WHETHER THE DISTRICT COURT ERRED IN REFUSING TO REINSTATE PLAINTIFF-APPELLANT TO HIS FORMER JOB EVEN THOUGH THE JURY'S VERDICT WAS IN PLAINTIFF'S FAVOR. | 16 |
| V. | CONCLUSION | 17 |
| | CERTIFICATE OF SERVICE | 17 |

# CITATIONS


| CASES CITED: | PAGES |
| --- | --- |
| 1. CSC vs. Letter Carriers, 413 US 548, 564 (1972) | 10, 15 |
| 2. Ginn vs. Mathews, 533 F2d 477 (9 Cir 1976) | 9, 14 |
| 3. Hines vs. Cenla Community Action Committee, Inc., 474 F2d 1052 (1973) | 9 |
| 4. Mathis vs. Opportunities Industrial Centers, Inc., 545 F2d 97 (9 Cir 1976) | 15 |
| 5. Oppenheimer Méndez vs. Acevedo, 388 FSupp 326, affirmed 512 FSupp 1373 (1 Cir 1975) | 16 |
| 6. Polk County vs. Dobson, 50 LW 4077 | 12 |
| 7. Randell Baker vs. Kohn, 641 F2d 14 (1 Cir 1981), affirmed 50 LW 4826 (1982) | 9, 14<br>13, 16 |
| 8. Rivas Tenorio vs. L.A.I., 554 F2d 492 (1 Cir 1977) | 16 |
| 9. Smith vs. Ehrlich, 430 FSupp 818 (1976) | 10, 15 |
| 10. United States vs. Orleans, 425 US 807 (1976) | 12 |
| 11. Varela vs. Jorge Segarra Olivero and others, Opinion issued by Judge José V. Toledo, Civil No. 77-749 | 2 |

| UNITED STATES CONSTITUTION AND STATUTES: | PAGES |
|---|---|
| 1. Hatch Act, 5 USC 1502(a) | 10, 11, 14 |
| 2. Legal Services Corporation Act, 1974 | 4, 5, 6, 8 |
| (a) Rules and Regulations | |
| 1616.1; 1616.3; 1616.5; 1616.6 | 6 |
| 1607.1(h) | 8 |
| (b) Title 28 USC, Section 1331 | 3 |
| (c) Title 42 USC, Section 1983 | 3 |
| (d) Title 42 USC, Section 2996 | 4, 9 |
| (b)(a); (c)(a); (d)(f); (e) | 4 |
| (b)(d) | 5 |
| (e)(b) | 4, 7 |
| (e)(b)(5); (e)(e) | 7 |
| (f) | 6 |
| (f)(a)(2) | 5 |
| (f)(a)(6) | 10 |
| (f)(b)(8) and (9) | 5 |
| (f)(c) | 5 |
| (h)(c)(2) | 6 |

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| | |
|---|---|
| JULIO C. LOPEZ GERENA,<br>Plaintiff-Appellant<br>Vs.<br>PUERTO RICO LEGAL SERVICES, INC.,<br>Defendant-Appellee. | NO. 82-1474 |

BRIEF ON BEHALF OF PLAINTIFF-APPELLANT

I. STATEMENT OF ISSUES:

1. Whether the District Court erred in vacating the judgment and in dismissing the Complaint on the basis of lack of jurisdiction and in failing to find that Defendants-Appellees' acts in dismissing Plaintiff-Appellant without due process were governmental action and thus subject to the strictures of the Fifth Amendment of the Constitution of the United States.

2. Whether the District Court erred in refusing to reinstate Plaintiff-Appellant to his former job even though the jury's verdict was in Plaintiff's favor.

II. STATEMENT OF THE CASE:

This is an action brought by Plaintiff-Appellant, Julio C. López Gerena, against his former employer, Puerto Rico Legal Services, Inc., claiming that he was dismissed from his employ as a lawyer in one of the offices of Puerto Rico Legal Services in violation of the due process clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

At an early stage of the case, Defendant-Appellee had presented a Motion to Dismiss for Lack of Jurisdiction on the basis that Defendant was a private non-governmental organization and, therefore, its actions were not subject to the limitations of the Fifth and Fourteenth Amendments. This Motion was opposed by Plaintiff-Appellant and denied by the District Court in an Order dated May 11, 1981, issued by Honorable Carmen Consuelo Cerezo. See Appendix, Pages 26-27. Judge Cerezo based her denial of Defendant's Motion on an earlier Opinion which had been issued by the late Judge José V. Toledo in the case of Varela vs. Jorge Segarra Olivero and others, Civil No. 77-749, in which the same jurisdictional question had been raised, amply considered, and decided contrary to the Defendant by Judge Toledo. See Appendix, Pages 12-25.

During the late stages of the case, before trial and during the trial of the case before Judge Robert A. Grant, Defendant again raised its jurisdictional argument but it was overruled.

The case went to the jury, who brought the verdit in favor of Plaintiff in the amount of SIXTY-FIVE THOUSAND DOLLARS ($65,000.00) and judgment was entered in accordance with the verdict. See Appendix, Page 40.

By a post-trial motion, Defendant raised again its jurisdictional argument. See Appendix, Pages 43-54. This time the Hon. Robert A. Grant entertained the motion and, after considering the Opposition filed by Plaintiff, reversed the earlier rulings, found that there was lack of jurisdiction, vacated the judgment,

and dismissed the case. See Appendix, Pages 68-90. Plaintiff timely appealed. See Appendix, Page 93.

III. STATEMENT OF FACTS:

Plaintiff's Complaint, filed April 18, 1980, alleged as jurisdictional grounds that the Defendant was both a creature of the Commonwealth and Federal Governments and that Defendant's actions were both Federal and State actions. Jurisdiction was claimed both under Section 1983, Title 42 USC, and Section 1331, Title 28 USC. See Plaintiff's Appendix, Page 2. The District Court originally found jurisdiction based on the Opinion of Judge Toledo on the grounds that the acts of Defendant amounted to action under color of federal law. Therefore, that there was jurisdiction under Section 1331, Title 28 USC. See Appendix, Pages 18-25.

Because Defendant's original Motion for Lack of Jurisdiction was denied on the strength of Judge Toledo's Opinion, no hearing was held at any time for the purpose of offering evidence as to the nature of Puerto Rico Legal Services, Inc. As far as Plaintiff-Appellant is concerned, when the trial came, the jurisdictional issue had already been disposed of an the ruling of Judge Cerezo, which adopted Judge Toledo's ruling, was the law of the case.

Therefore, the jurisdictional facts are those which appear from Judge Toledo's Opinion and from the provisions of the federal law and regulations that govern Puerto Rico Legal Services, Inc., and its parent, Legal Services Corporation.

From them, the pertinent following facts appear:

1. Puerto Rico Legal Services, Inc., is a product of the Legal Services Corp. Act, 1974, Section 2996, et seq, Title 42 USC, whereby Congress implemented its public policy of providing financial support for legal assistance in non-criminal matters to persons financially unable to afford legal assistance. Section 2996 (b)(a).

2. The Legal Services Corporation created, although was not to be considered a department, agency, or instrumentality of the Federal Government, is governed by an eleven-member board of directors appointed by the President with the consent of the Senate. Section 2996 (c)(a). The officers and employees of the Corporation are considered officers and employees of the Federal Government for the purposes of compensation relating to work injuries, civil service retirement, and life and health insurance. Section 2996 (d)(f).

3. The Legal Services Corporation is totally funded by the Federal Government with the purpose of channelling funds to entities who furnish legal assistance to poor people. Section 2996 (e).

4. The Corporation is granted wide powers over its recipients and their employees to insure that they comply with the Legal Services Corporation Act, its rules, regulations, and guidelines promulgated under said law. Section 2996 (e)(b).

5. The Law and the rules and regulations enacted under its authority empowers the Legal Services Corporation to establish,

in consultation with the Director of the Office of the Management and Budget and with the Governor of the several states, maximum income levels for individuals eligible for legal assistance under the Law and establish guidelines to determine eligibility of clients. Section 2996 (f)(a)(2). The Law, then, is specific as to what type of legal services can be rendered to clients, and specifically forbid recipients from rendering certain types of legal services. For instance, litigation seeking to enforce the right to non-therapeutic abortion is prohibited, as well as litigation relating to the desegregation of any elementary or secondary school or school system. Section 2996 (f)(b)(8) and (9).

6. The Law also orders the Legal Services Corporation to insure "that any recipient organized solely for the purpose of providing legal assitance to eligible clients is governed by a body of at least sixty per cent (60%) of which consist of attorneys who are members of the Bar of the State in which the legal assistance is to be provided..." Section 2996 (f)(c). It is also the duty of the Corporation under the Law to monitor, evaluate, and make sure that the recipients comply with all the provisions of the Legal Services Act. Section 2996 (b)(d).

7. The record and reporting provisions of the Law are very specific and the Comptroller General of the United States has the power to "inspect the books, accounts, financial records, files, and other papers or property belonging to or in use by such grantee, contractor, or person, or entity, which relate to the

disposition or use of funds received from the Corporation." Section 2996 (h)(c)(2).

8. The statutes confer detailed power over the conduct of the employees of the Corporation and its recipients to insure that they comply with the Legal Services Corporation Act, its Rules and Regulations, and guidelines promulgated under said law. Section 2996 (f).

9. The Law and the Regulations establish provisions to insure that recipients will choose highly qualified attorneys for its staff. Section 1616.1 of the Regulations. It orders the recipient to establish the qualifications for individual positions for attorneys and details the relevant factors to be taken into consideration. Section 1616.3 of the Regulations.

10. Section 1616.5 provides as follows:

> "When equally qualified applicants are under consideration for an attorney position, a recipient shall give preference to an applicant residing in the community to be served."

11. Section 1616.6 provides:

> "A recipient shall adopt employment quelifications, procedures, and policies that need the requirements of applicable laws prohibiting discrimination in employment, and shall take affirmative action to insure equal employment opportunity."

12. The activities of the staff attorneys of recipients are regulated and limited by the provisions of the Law and Regulations. The Law specifically forbids employees or recipients, while carrying out legal assistance activities, to engage in strikes, pickets, or public demonstrations or other types of activities, and provides

for a suspension of employees or recipients in case of such violations. Section 2996 (e)(b)(5). Staff atrorneys of recipients are deemed to be state or local employees for the purposes of Section 1501, et seq, Title 5 USC, Section 2996 (e)(e), and are barred from participating in any political campaign or political activities or be candidates for public or party office. Section 2996 (f)(a)(6).

13. The Law also requests recipients to take disciplinary action against its employees in case of violations by said employees of the provisions of Law or its Rules, Regulations, or guidelines. Section 2996 (e)(b).

IV. ARGUMENT:

1. Whether the District Court erred in vacating the judgment and in dismissing the Complaint on the basis of lack of jurisdiction and in failing to find that Defendant-Appellee's acts in dismissing Plaintiff-Appellant without due process were governmental actions and thus subject to the strictures of the Fifth Amendment of the Constitution of the United States.

How far can government inject itself into an activity, program, or organization without giving it its color? It cannot be denied that Congress has implemented a broad comprehensive program of legal aid in civil cases for the poor of the nation, paid, controlled, and dominated by the Federal Government. Although the Legal Services Corporation has been given the form

of a private non-profit corporation, the fact that all its members are appointed by the President, with the consent of the Senate, shows that it is an instrumentality or activity of the Federal Government or acts under color of Federal Law. The recipients, including Puerto Rico Legal Services, Inc., exist, organized under norms dictated by Federal Law, solely for the purpose of providing legal aid with the money received from the Federal Government. No doubt that the Federal Government has chosen the instrument of establishing a non-profit corporation in order to render the services of legal aid to the poor. But by choosing such a system, it has not meant to give legal aid through a system of subsidizing purely privately operated institutions. Both, Legal Services Corporation and its recipients, were created or tailored made to render the services and fulfill the wishes of Congress with regard to assisting the poor in the civil litigation.

Puerto Rico Legal Services, Inc., can hardly be considered a privately operated institution if we consider that it was formed based on the directives and provisions of the Legal Services Corporation Act, which provided its method of organization and composition of its membership and Board of Directors. Its method of selection and composition is subject to the approval of the Legal Services Corporation. See Section 1607.1 (h) of the Regulations. If we add to this the fact that there exists complete funding from the Federal Government and that the activities of the recipient entities are limited, regulated, and controlled by the provisions of the Law and the Regulations, very

little is needed to find that the Federal Government actually thus control the institution under the test referred to in Randell Baker vs. Kohn, 641 F2d 14 (1 Cir 1981), affirmed 50 LW 4826 (1982).

Hardly, in the light of the provisions established in Sections 2996, et seq, Title 42 USC, and the Rules and Regulations established thereunder, can anyone claim that Puerto Rico Legal Services, Inc., remains free in fact to control its own affairs. The case of Ginn vs. Mathews, 533 F2d 477 (9 Cir 1976), is applicable. There the Court found that the Fifth Amendment was applicable to a discharge of employees by a federally and state funded regulated Headstart Program. This Court, in Randell Baker vs. Kohn, supra, distinguished said ruling on the grounds that the hiring and firing were under the control of a Board of Directors, the composition of which was controlled in part by the Regulations. In the present case, precisely, the composition of the Board of Directors of Puerto Rico Legal Services, Inc., is totally controlled by the Regulations. Compare Hines vs. Cenla Community Action Committee, Inc., 474 F2d 1052 (1973), where a privately appointed Board of Directors was involved.

The regulation of personnel policies of recipients is greatly significant. Substantial limitations and regulation on the discretion of staff attorneys of recipients to take cases is imposed. They are prevented from handling certain types of cases and from engaging in certain type of conduct which, as the lawyer of a private organization, would be perfectly legal or proper. For

instance, they cannot take cases seeking to procure the right to obtain a non-therapeutic abortion nor participate in any picket or boycot. Neither to engage in pro-labor or anti-labor activities. What is more, attorneys of these so called private organizations cannot participate in any political activity. Failure to comply with these injunctions would cause their dismissal from employment. This prohibition is, in our opinion, determinative of the existence of federal action in the present case. In Smith vs. Ehrlich, 430 FSupp 818 (1976), it was held that staff attorneys of recipient legal services agencies could not participate in partisan or non-partisan political activities because Section 2996 (f)(a)(6) that make applicable the Hatch Act, 5 USC 1502(a), to said employees, was constitutional, as Congress has the power to regulate the partisan political activities of government employees and could also, as to said public employees, even prohibit them to enter non-partisan political activities. Surely, if said employees are private employees, Congress cannot attach such conditions, for it would be unconstitutional. See Smith vs. Ehrlich, Page 820. Footnote 3. Congress' power to regulate the speech of its employees differs substantially from that of its powers to limit the speech of its citizens in general. CSC vs. Letter Carriers, 413 US 548, 564 (1972).

In Smith vs. Ehrlich, supra, the Court stated:

> "The determination of the extent to which political activities of government employees shall be regulated lies primarily with Congress." Page 821. (Emphasis ours.)

If these are federal employees, then we cannot conceive how did the acts of Puerto Rico Legal Services, Inc., its employees, and its Board of Directors, in dismissing and ratifying the dismissal of Plaintiff without due process, is not the act of the Federal Government. The District Court gave weight to the fact that Congress had especifically provided that the Legal Services Corporation would not be considered "a department, agency, or instrumentality, of the Federal Government." Congress' attempt by words to disassociate the Federal Government from Legal Services Corporation and the State Legal Services organizations, looses all credibility and ceases to have weight when, on the other hand, Congress has, by other provisions of the law, made said institutions and their acts, actions of the Federal Government.[1] To assert that the Legal Services Corporation exists independently of the Federal Government, in spite of the fact that its Board of Directors is appointed by the President, to administer a budget approved and provided by Congress and with employees which are Federal employees for compensation, for work injuries, Civil Service Retirement, Life and Health Insurance, Freedom and Information Act, and the Hatch Act, is just too difficult to accept. It is equivalent of saying that whatever Congress says is private, it's private, by fiat of Congress irrespective of constitutional principles.

---

[1] Through Congressional appropiations and through "Presidentially appointed Board of Directors by and with the advice and consent of the Senate", Congress effectively assured public accountability of the Corporation. See Page 3874, U.S. Code Congressional and Administrative News (1974).

Neither the fact that Legal Services Corporation and its State Services Organizations require independence, militates against the finding that it is acting under Federal Law when one of its employees is dismissed by the agency in violation of due process. The independence that is needed is that of the attorneys while discharging their duty to their clients. In this respect, the case of Polk County vs. Dobson, 50 LW 4077, decided December 14, 1981, is applicable. There the Supreme Court of the United States held that a public defender, an employee of the State, does not act under color of the State Law when performing a lawyer's traditional function as counsel to a defendant in a criminal proceeding. The Court, nevertheless, made the distinction that said public employee may act under color of State Law doing other functions.

The Supreme Court stated as follows:

> "In concluding that Shepard did not act under color of State Law in exercising her independent professional judgment in a criminal proceeding, we do not suggest that a public defender never acts in that role. In Branti vs. Finckel, 445 US 500 (1980), for example, we found that a public defender so acted when making, hiring, and firing decisions on behalf of the State. It may be - although the question is not present in this case - that a public defender also would act under color of State Law while performing certain administrative and possibly investigative functions." Polk County vs. Dobson, 50 LW, at Page 4080.

The District Court relied also in United States vs. Orleans, 425 US 807 (1976), which dealt with the status of a community action agency funded by the Office of Economic Opportunity. The Supreme Court held there that such an agency did not become an

agent or instrumentality of the United States for the purpose of the Federal Tort Claim Act. We consider that the test to determine whether the action of an entity is that of the Federal Government is narrower for the purposes of the Federal Torts Claim Act than for constitutional purposes.

The case of Randell Baker vs. Kohn, 641 F2d 14 (1981), affirmed by the Supreme Court of the United States, see 50 LW 4826, Opinion of June 25, 1982, is very distinguishable from the facts of the present case. There the Court was dealing with an isolated non-profit school on privately owned property. The school was founded as a private institution. In the present case we know that Puerto Rico Legal Services, Inc., was just created specially to imprement the provisions of Legal Services Corporation Act. In Randell Baker, personnel policies were few and, contrary to the present case, did not impose the substantial limitations on the freedom of action of employees with respect to the manner in which they fulfill their duties, including the prohibition now existing in the present case against political activities. These limitations, present in this case, we claim have converted the employees from merely private employees to public employees.

In Randell Baker vs. Kohn, 50 LW 4826, at Page 4828, the Supreme Court, in finding that the New Perspective school was not a state actor, said:

> "The school, like the nursing homes, is not fundamentally different from many private corporations whose business depends primarily on contract

> to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors could not become acts of the government by reason of their significant or even total engagement in performing public contracts.
>
> The school is also analogous to the public defender found not to be a state actor in Polk County vs. Dobson, 50 USLW 4077 (1982). There we concluded that although the state paid the public defender, a relationship with her client was 'identical to that existing between anyother lawyer and client'. Id. at 4078. Here the relationship between the school and its teachers and counsellors is not changed because the state paid the tuitions of the students." Page 4828.

Again, in Randell Baker vs. Kohn, the Supreme Court considered that the absence of interest by the regulators in the personnel policies was a significant factor. As we have repeatedly stated here, personnel regulations, to the extent of converting them in public employees, for the Hatch Act purposes, has been of paramount interest to the Federal Government.

As we stated earlier, the case of Ginn vs. Mathews, 533 F2d 477 (9 Cir 1976), is applicable. There the Court ruled that:

> "In any event, on the record here we find abundant evidence of significant state action which brings this case within Burton and without the parameters of Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). It is akin to McQueen v. Druker, 438 F.2d 781 (1st Cir. 1971), where the court said:
>
> "'Mere receipt of financial subsidy and subjection to some regulation are the conditions of much of our societal life. Neither factor--or both together--is dispositive of 'state action'. But, while we disavow any effort to be definitive, we conclude that at least when a specific governmental function is carried out by heavily subsidized private firms or individuals whose freedom of decision-making has, by contract and the reserved governmental power of continuing oversight, been circumscribed substantially more than that generally accorded an independent contractor, the coloration of state action fairly attaches.' Id. at 784-85.

"Therefore, it is our view that the complaint states a claim upon which relief may be granted on either or any of the First, Fifth, or Fourteenth Amendment claims. We express no view as to the merits of those claims."

See also Mathis vs. Opportunities Industrial Centers, Inc., 545 F2d 97 (9 Cir 1976).

In conclusion, when we consider that Puerto Rico Legal Services' funding by the Federal Government is total and that the statutory and administrative regulations govern most of the activities of the legal services agencies, specially as to those related to personnel policies, even to the extreme of prohibiting the non-partisan political activities of its staff attorneys, Smith vs. Ehrlich, supra, the existence of federal action attaches. These staff attorneys who join the employ of these legal services organizations funded by Legal Services Corporation, who lose their political rights in exchange for an employment provided with funds from the Federal Government, have the right to work and not be dismissed from their work without the protection of the Fifth Amendment. CSC vs. Letter Carriers, supra.

Here we have a symbiotic relation between the Legal Services Corporation, a federal instrumentality or at least a federal agent, and the various state and local recipients which render services at the customer level. The symbiotic relationship is perhaps the most classic of all, that of mother and child. The federal agent, Legal Services Corporation, benefits from the relationship because it could hardly carry out the purposes assigned to it by Congress unless it creates and nurtures, supervises, and monitors, and controls its offspring that are the organizations that give

services at the customer level. On the other hand, the offspring benefits from this arrangement receiving the funds and experiences from the parent. One could not exists without the other, which is the classic example of symbiotic relationship. See Rivas Tenorio vs. L.A.I., 554 F2d 492 (1 Cir 1977).

In conclusion, not only did the Federal Government extensively dictated the composition, selection, and number of meetings of the Board of Directors of the recipients, as well as their compensation, but with respect to personnel policies, the control of what they may or may not do, including their political rights, have been extensively regulated and restricted. When the employees of a private organization cannot even exercise their constitutional rights because it has been dictated as a condition of their employment, no one can deny that control and domination over the recipient is exercised. This is not the ordinary regulation that was present in Randell Baker vs. Kohn, supra.

2. Whether the District Court erred in refusing to reinstate Plaintiff-Appellant to his former job even though the jury's verdict was in Plaintiff's favor.

As part of his remedy, Plaintiff-Appellant was entitled to be reinstated, see Oppenheimer Méndez vs. Acevedo, 388 FSupp 326, affirmed 512 FSupp 1373 (1 Cir 1975). Attorney's fees should also be awarded. We respectfully request that, if the Opinion is reversed, the judgment be reinstated with an Order for the reinstatement of Plaintiff to his former position that the hearing be ordered as to determine attorney's fees.

V. CONCLUSION:

For the reasons and arguments above stated, we respectfully request that the judgment of the District Court vacating the verdict and judgment issued previously and dismissing the Complaint for lack of jurisdiction be reversed and the judgment in favor of the Plaintiff reinstated, including an Order for the reinstatement of Plaintiff and an Order that the case be remanded to the District Court for an award of attorney's fees.

San Juan, Puerto Rico, this 13th day of August, 1982.

Respectfully submitted,

A. J. Amadeo Murga
1105 Banco Popular Center
Hato Rey, Puerto Rico 00918
Tels. (809) 753-0875, 764-5436

Attorney for Plaintiff-Appellant

CERTIFICATE OF SERVICE

IT IS CERTIFIED that two (2) copies of this Brief for Plaintiff-Appellant were mailed to José E. Fernández Seín, Esq., attorney for Defendat-Appellee, P.O. Box 9949, San Juan, Puerto Rico 00908; as well as copy of Appendix, on this 13th day of August, 1982.

A. J. Amadeo Murga

ORIGINAL

SEP 21 4 15 PM '82

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 82-1474

JULIO C. LOPEZ-GERENA
Plaintiff-Appellant,

v.

PUERTO RICO LEGAL SERVICES, INC.
Defendant-Appellee.

276 84 0004
Box 25
C 2898

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

---

BRIEF FOR DEFENDANT, APPELLEE

---

JOSE F. FERNANDEZ STIN
Attorney for Defendant, Appellee
P. O. Box 13342
Santurce, Puerto Rico 00908
Tel. (809) 724-1212

# TABLE OF CONTENTS

## Cases Cited


| | Page |
|---|---|
| Counterstatement of the Case ...................... | 1 |
| Counterstatement of the Facts ...................... | 3 |
| Jurisdiction .................................... | 7 |
| Argument ........................................ | 7 |
| Conclusion ...................................... | 13 |
| Certificate of Service ........................... | 14 |


## AUTHORITIES CITED

### Cases


| | |
|---|---|
| BLUM v. YARETSKY, 50 USLW 4859 (1982) ............. | 10 |
| LEFCOURT v. LEGAL AID SOCIETY, 445 F. 2d. 1150 (2nd. Cir. 1971) ............................. | 12 |
| POLK COUNTY v. DODSON, 20 USLW 4077 (1982) ......... | 10 |
| RENDELL-BAKER v. KOHN, 641 F. 2d. 14 (1981) Affirmed June 25, 1982, 50 USLW 4825 ............... | 9 |


### Statutes


| | |
|---|---|
| 5 USC §701 ....................................... | 5 |
| 42 USC §1981 and 1983 ........................... | 5 |
| 28 USC §1331, 1361 and 1343 ...................... | 5 |
| 42 USC 2996 d(e)(1) and (f)...................... | 13 |

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 82-1474

JULIO C. LOPEZ-GERENA
Plaintiff-Appellant,

v.

PUERTO RICO LEGAL SERVICES, INC.
Defendant-Appellee.

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

---

BRIEF FOR DEFENDANT, APPELLEE

---

JOSE E. FERNANDEZ SEIN
Attorney for Defendant, Appellee
P.O. Box 13342
Santurce, Puerto Rico, 00908
Tel. (809) 724-1212

COUNTERSTATEMENT OF THE CASE:

In April 18, 1980, plaintiff-appellant, Julio C. López-Gerena, a licensed attorney filed an action against his former employer, defendant-appellee, Puerto Rico Legal Services Corporation, Inc., seeking injunctive relief and monetary damages for violation of his constitutional rights. Jurisdiction was pleaded pursuant to 5 USC §701; 42 USC §1981 and 1983; and 28 USC §1331, 1361 and 1343. It was alleged that plaintiff-appellant was dismissed from his employment: "...in violation of the Due Process Clause of the Constitution of the United States insofar as plaintiff was dismissed without a prior hearing and in violation of the statutes and regulations applicable to all employees of Servicios Legales de Puerto Rico, Inc. (sic)..." (Complaint ¶6, Appendix pp. 1-6).

In July 2, 1980, defendant-appellee moved to dismiss the action or to have summary judgment granted in its favor arguing that the Court lacked jurisdiction over the claims raised in the complaint under any of the statutes pleaded by the plaintiff-appellant and that the complaint, as drafted, failed to state a claim upon which relief could be granted. (Supp. Appendix pp. 1-18). Plaintiff-appellant replied to said motion by arguing that jurisdiction properly lied in this case because in a prior similar action against Puerto Rico Legal Services, Inc., the late Chief Judge, José V. Toledo, from this district, had concluded that the actions of Puerto Rico Legal Services, Inc., constituted federal governmental action. (Appendix pp. 10-11).

In May 11, 1981, Judge Carmen Consuelo Cerezo denied defendant-appellee's motion, "...on the grounds expressed in this Court's opinion and order of June 16, 1977, per Honorable José V. Toledo, U.S. District Judge in the case of Pedro J. Varela v. Jorge Segarra

<u>Olivero,</u> Civil No. 77-749." (Appendix pp. 15-25).

A pretrial conference was held on December 9, 1981, before Judge Cerezo and a pre-trial stipulation was discussed, signed and approved by the Court. At pre-trial the parties agreed that this action was brought under 42 USC §1981 and 1983, for a dismissal in violation of the applicable rules and regulations and as a result or arbitrarian (sic) and capricious actions on the part of employees of Puerto Rico Legal Services, Inc. Plaintiff-appellant did not assert any claims for violation of the Fifth Amendment. Defendant-appellee renewed its jurisdictional challenge claiming that it was a private non-profit corporation organized under the laws of the Commonwealth of Puerto Rico and that its actions were neither state nor federal governmental actions subject to the strictures of the Fifth Amendment. (Appendix, pp. 28-39).

The case was then assigned to Judge Robert A. Grant, Senior District Judge from South Bend, Indiana, sitting by special designation.

A jury trial was commenced on January 18, 1982. Before the jury was selected defendant-appellee renewed its motion to dismiss for lack of jurisdiction and the motion was denied based on Judge Cerezo's prior ruling.

Thereafter, a trial was had and on January 20, 1980, a jury verdict was rendered in favor of plaintiff-appellant and damages were awarded to him in the aggregate amount of $65,000.00. A Judgment was entered that same day.

In February 1, 1982, the defendant-appellee filed a motion to set aside verdict, for a new trial and for remittitur. Sub-

sequently, on February 24, 1982, the defendant-appellee filed a motion to dismiss for lack of subject matter jurisdiction. Opposing counsel met with the trial judge on February 26, 1982, and plaintiff-appellant was asked to file a reply to defendant-appellee's jurisdictional challenge. Said reply was filed on March 17, 1982.

By order dated April 30, 1982, the trial judge, Honorable Robert A. Grant, vacated the judgment entered in favor of the plaintiff-appellant and dismissed the action for want of jurisdiction upon concluding that defendant-appellee's actions were neither actions of the Commonwealth of Puerto Rico, pursuant to 42 USC §1983 or the actions of the federal government. ( Appendix 68-90).

COUNTERSTATEMENT OF THE FACTS:

Plaintiff-Appellant is a practicing attorney who, on January 7, 1976 became employed by the defendant-appellee, Puerto Rico Legal Services, Inc., to work as a staff attorney at the program's direct service center located in the town of Humacao, Puerto Rico. The position of staff attorney was a unionized position covered by a Collective Bargaining Agreement. On November 8, 1978, plaintiff-appellant was named to the position of deputy director of the Humacao Center, this position being a managerial position covered by a personnel regulation that had been promulgated in 1974. (Trial Exhibit I), and subject to a 6 month probationary period.

Puerto Rico Legal Services, Inc., the defendant-appellee, is a private non-profit corporation organized under the laws of the Commonwealth of Puerto Rico, prior to 1974 to provide free legal assistance in cases of civil nature and notarial services to those persons that qualify for its services. It is managed and directed by an Executive Director. Its administrative structure includes

a Board of Directors. It receives funds both from the Legislature of Puerto Rico and from the Congress of the United States. It is also empowered to receive funds from private organizations.

Effective July 15, 1979, plaintiff-appellant was separated from his employment by the Executive Director of Puerto Rico Legal Services, Inc., the stated reasons being that plaintiff-appellant had failed to approve his probationary period. The personnel regulation covering non-union, managerial employees provided for an appeal to be taken by the aggrieved party from the decision of the Executive Director to the Executive Committee of the Board of Directors.

As it appears from the complaint and the pretrial order, plaintiff-appellant charged that defendant-appellee had failed to render a timely evaluation and hence, that he had attained permanency in the position of deputy director and could not be dismissed without a prior hearing. Plaintiff-appellant further charged that he was evaluated a month after the expiration of the probationary period and that said evaluation was made in an arbitrary and capricious manner. Additionally, it was charged that under the applicable personnel regulation, plaintiff-appellant had a right to return to his prior unionized position as staff attorney if he failed his probationary period in the new position.

The facts needed to support these charges were disputed at trial. Evidence was presented to show that Mr. López Gerena had been timely evaluated by his supervisor, that he had been notified in writing, of the decision of the Executive Director and that he had failed to file a written appeal with the Executive Committee.

The personnel regulation does not provide for a right to return to a priorly held position when an employee fails to approve his probationary period.

Based on the premises that he had attained permanency in the position of deputy director and that he was dismissed without a prior hearing "in violation of the statutes and regulations applicable to all employees of Servicios Legales de Puerto Rico, Inc. (sic)," plaintiff-appellant then sought to attach jurisdiction pursuant to 5 USC §701, 42 USC §1981 and 1983; and 28 USC §1331, 1361 and 1343.

No factual allegations were made in the complaint to sustain a charge for racial discrimination under 42 USC §1981. No such charges were made either in the complaint or described in the pre-trial order as being part of plaintiff-appellant's theory.

The only jurisdictional allegations made in the complaint are contained in paragraph 1. Said paragraph reads as follows:

> "1. The plaintiff is a citizen of the United States and domiciled in the Commonwealth of Puerto Rico. The defendant is a corporation organized under the laws of the Commonwealth of Puerto Rico having its principal place of business in San Juan, Commonwealth of Puerto Rico and with offices in different parts of the Commonwealth of Puerto Rico. It is governed by a Board of Directors and its daily affairs run by its Executive Director whose name upon information and belief is Jorge Segarra Olivero. The defendant was created to administer federal funds granted by Congress for the purpose of providing legal assistance to the poor in Puerto Rico. The defendant receives said federal funds and also receives funds from the Government of Puerto Rico and other municipalities of Puerto Rico. The defendant exists solely because of the federal funds and the Commonwealth funds provided expressly by the Federal Congress and the Puerto Rican Legislature for the purspose of having a body which may give legal aid to the poor people of Puerto Rico. All its actions are, therefore, actions of the federal and state governemnt. Jurisdiction is invoked pursuant Section 701, Title 5 U.S.C. and Sections 1981 and 1983, Title 42 U.S.C. as well as Sections 1331, 1361 and 1343,

> Title 28 U.S.C. The amount in controversy excluding costs, interest and attorney's fees exceeds the sum of $10,000.00. Federal question jurisdiction is invoked to wit: the violation of the civil and constitutional rights of plaitniff specifically his rights under the due process clause of the Constitution of the United States."

No allegations were made as to any regulatory scheme between the Commonwealth government or the federal government and the defendant-appellee and no facts are given to establish such a relationship.

No allegations were made as to whether defendant-appellee was exercising a "public function" or one traditionally reserved for the government.

No allegations were made or facts asserted to sustain the existence of a "symbiotic relationship" between the defendant-appellee and the government, be it state or federal.

As noted by the trial judge, in his memorandum opinion, plaintiff-appellant did not submit any evidence at trial or made any reference in his memorandums as to these necessary allegations. Not only that, but no evidence was presented at trial as to defendant-appellee's funding, this being the only jurisdictional factual assertion made in his complaint.

Recognizing this void and probably realizing the fatality of this argument plaintiff-appellant states, at page 3 of his brief, that:

> "Because Defendant's original Motion for Lack of Jurisdiction was denied on the strength of Judge Toledo's Opinion, no hearing was held at any time for the purpose of offering evidence as to the nature of Puerto Rico Legal Services, Inc. As far as Plaintiff-Appellant is concerned, when the trial came, the jurisdictional issue had already been disposed of an the ruling of Judge Cerezo, which adopted Judge Toledo's ruling, was the law of the case.

> "Therefore, the jurisdictional facts are those which appear from Judge Toledo's Opinion and from the provisions of the federal law and regulations that govern Puerto Rico Legal Services, Inc., and its parent Legal Services Corporation."

This position is legally unsound because the essential jurisdictional facts must always be alleged and proven in any action. Suffice it to say on this point that, as will be discussed hereinafter, Judge Toledo's opinion was predicated on a finding that providing legal assistance to the poor is the policy of the federal government as embodied in the Legal Services Corporation Act of 1974, and that, since defendant-appellee was engaged in giving said legal assistance, therefore, federal governmental action was present.

JURISDICTION:

This Court has jurisdiction of this appeal from a final judgment of a district court under the provisions of 28 U.S.C. §1291.

ARGUMENT:

The District Court Did Not Err In Vacating The Judgment Entered In Favor of Plaintiff-Appellant and In Dismissing the Complaint for Want of Jurisdiction and in Refusing to Order Plaintiff-Appellant's Reinstatement

As previously stated, at all times during the pendency of this litigation before the District Court and even now before this Court, plaintiff-appellant has relied exclusively on Judge Toledo's Opinion and Order of June 16, 1977, (Appendix pp. 12-25) in order to meet its jurisdictional burden. The complaint, as drafted, and the plaintiff-appellant's statement of his theory and jurisdictional basis at pretrial demonstrate an obvious lack of necessary factual and legal recitals. When plaintiff-appellant's allegations were challenged by the defendant-appellee in a motion to dismiss for

lack of jurisdiction, said challenge was met with a laconic reference to Judge Toledo's opinion. No attempt was made by plaintiff-appellant to amend its pleadings. No discovery was conducted by plaintiff-appellant to inquire as to the necessary jurisdictional elements; e.g. defendant-appellee's funding, its relationship to the Commonwealth or federal government, the government's regulatory scheme over the defendant-appellee, the government's involvement in the hiring and dismissal of defendant-appellee's employees, and particularly of Mr. López-Gerena, or any such other matters. The District Court went along with Judge Toledo's opinion and denied defendant-appellee's motion on the grounds expressed by Judge Toledo, without a hearing and without receiving any evidence as to basic factual allegations. From that point on plaintiff-appellant presumably was going forward based on a jurisdictional charge that federal governmental action was present in this case, as had been Judge Toledo's ruling in the prior case, even though plaintiff-appellant had asserted jurisdiction under several statutes.

At page 2 of his memorandum of March 17, 1982, submitted to the trial judge, (Appendix 55-67), plaintiff-appellant stated that:

> "Precisely, the ruling of Judge Toledo in the Varela case was to the effect that Defendant, Puerto Rico Legal Services, Inc., is the federal agency or, at least, that its employees are to be considered federal employees, or that the action of the corporation is federal action."

It is submitted that plaintiff-appellant was indeed pursuing a claim based on federal governmental action.

In this sense, and as noted by the trial judge in his memorandum order, the statements made by plaintiff-appellant at pretrial

that this action was one; "for injunctive relief and damages filed under Section 1981 and 1983, Title 42 USC,..." and the lack of reference to a Fifth Amendment violation, or to federal governmental action and the limiting of the instructions to the jury to the question of a Section 1983 action is both revealing and inexplicable. However, plaintiff-appellant's candid statement, at page 3 of his brief, that Judge Toledo's ruling was the law of the case and that seemingly he relied on the jurisdictional facts that appear from said opinion is for all purposes a corroboration of the trial judge's statement that no evidence whatsoever was presented by plaintiff-appellant's jurisdictional allegations. The statement is also an admission that plaintiff-appellant did not present any evidence to show that the facts stated by Judge Toledo, in 1977, were the same in 1982, or to show any involvement between defendant-appellee and either the Commonwealth or the federal government concerning the hearing and dismissal of defendant-appellee's employees, particularly, Mr. Lopez-Gerena.

Regardless of whether plaintiff-appellant is pursuing a claim based on state action or federal action, the fact remains that as the trial judge concluded, based on the record and the evidence presented at trial, plaintiff-appellant failed to establish that defendant-appellee's actions in dismissing Mr. López-Gerena were the actions of the federal or the Commonwealth government.

Applying, as we must, the test applied by this Court in RENDELL-BAKER v. KOHN, 641 F. 2d. 14 (1981), affirmed on June 25, 1982, at 50 U.S. L.W. 4825, we submit that the trial judge's opinion is correct. It is not necessary for us to recite fully the facts as they were developed in RENDELL, supra, Certain facts,

however, must be noted. There this Court indicated that because of the school's funding, the government's regulatory scheme over the school and the schools' functions it had a close relationship with the State. However, a crucial element considered was that insofar as the plaintiff's discharge, it was determined that the State had relatively little involvement in the school's personnel matters and particularly in decisions involving the discharge of personnel. This Court found that the defendants there, private actors, had not acted under color of state law.

The Supreme Court affirmed this Court's decision. The issue there was narrowly framed as to whether the school's action could fairly be seen as state action. Drawing rather extensively from BLUM v. YARETSKY, decided June 25, 1982, 50 USLW 4859, where decisions regarding transfers of patients to and from certain nursing homes were claimed to be state action, the Supreme Court went on to apply the following factors which we will endeavor to apply to our case:

1. Funding. In BLUM, supra, the State subsidized the operating and capital costs of the nursing homes, and paid the medical expenses of more than 90% of the patients. Similarly, in RENDELL-BAKER, supra, public funds accounted for at least 90% of the school's operating budget, reaching at times a figure of 99%.

The Court concluded that the school's receipt of public funds did not make the discharge decision acts of the state. Cf. POLK COUNTY v. DODSON, 50 USLW 4077 (1982). In our case, plaintiff-appellant did not present any evidence as to defendant-appellee's funding by the Legal Services Corporation, although, concededly, it accounts for a considerable percentage of its funds. However,

defendant-appellee does not exist solely because of the Legal Services Corporation. It existed prior to 1974.

2. Regulations. In BLUM, supra, the Court found that the nursing homes were extensively regulated by the State. In fact, the State was indirectly involved in the transfer decisions because it helped keep the costs of the program down. The Court held that state regulation, even if extensive and detailed, did not make a private actor's actions state action. in RENDELL-BAKER, supra, the Court found that, even though a government Committee on Criminal Justice had the power to approve persons hired by defendant, such a regulation was not sufficient to make a decision to discharge by a private actor, state action. In our case no evidence was presented to show any regulation by the federal government of defendant-appellee's hiring or discharge procedures. In fact, as trial Exhibit I shows the personnel regulation prepared and promulgated by defendant-appellee for its non-unionized personnel had existed since 1974. No evidence was presented to show any state or federal involvement in Mr. Lopez-Gerena's discharge.

3. Public Functions. In RENDELL-BAKER, supra, the Court stated that the question here is not whether a private group is serving a "public function" but whether the function performed has been traditionally the exclusive prerrogative of the State. Although the Court agreed that education of maladjusted high school students is a public function, it found that these services were not the exclusive province of the State. This is the crux of the problem, insofar as Judge Toledo's opinion, because there it was found that giving legal assistance to the poor is a federal governmental function. With all due respect we disagree. As the trial judge

correctly pointed out: "Providing legal services to the poor, especially in non-criminal cases, has traditionally been performed by private attorneys through local, state and national Bar programs." accord, LEFCOURT v. LEGAL AID SOCIETY, 445 F. 2d. 1150 (2d. Cir., 1971), POLK COUNTY v. DODSON, supra.

4. "Symbiotic Relationship" test. In RENDELL-BAKER, supra, the Court found that the school's relationship with the State was not different from that of many contractors performing services for the government and that no symbiotic relationship existed. In our situation, the existence of such a relationship is an impossibility. Both by its legal mandate and by its operations, the legal services organizations must have freedom of action to operate independent of the government, precisely because in many, if not most of its cases, the government, be it state or federal, figures as the defendant. Legal Services organizations have traditionally acted as watch-dogs in areas such as welfare programs, public housing, prisoners' rights and conditions of confinement, social security and others.

Plaintiff-appellant states in his brief that RENDELL-BAKER, supra, is very distinguishable from the facts of the present case. We agree in the sense that there the Court was faced with a stronger case for a finding of state action mainly because of the functions involved. But, we submit that this decision is controlling.

Plaintiff-appellant argues that the Legal Services Corporation is an instrumentality or that its activities are those of the federal government or that it acts under color of federal law. No cases are cited for this unqualified proposition. Indeed, by statutory disposition, such a conclusion is unwarranted since sections

2996 d(e)(1) and (f) of the Legal Services Corporation Act of 1974, 42 USC, provides that:

> "(e)(1) Except as otherwise specifically provided in this subchapter, officers and employees of the Corporation shall not be considered officers or employees, and the Corporation shall not be considered a department, agency, or instrumentality, of the Federal Government.
>
> "(2)....
>
> "(f) Officers and employees of the Corporation shall be considered officers and employees of the Federal Goverment for purposes of the following provisions of Title 5: subchapter I of chapter 81 (relating to compensation for work injuries); chapter 83 (relating to civil service retirement); chapter 87 (relating to life insurance); and chapter 89 (relating to health insurance). The Corporation shall make contributions at the same rates applicable to agencies of the Federal Government under the provisions referred to in this subsection."

Even assuming that the Legal Services Corporation can be treated as a federal agency or instrumentality, the fact remains that under RENDELL-BAKER, supra, Puerto Rico Legal Services, Inc. cannot be held as the former's agent or alter ego and its actions taken in dismissing Mr. López-Gerena cannot be treated as federal action.

## CONCLUSION

The Judgment below, dismissing the complaint should be affirmed.

In Santurce, Puerto Rico, September 23, 1982.

Respectfully Submitted,

JOSE E. FERNANDEZ-SEIN
Attorney for Defendant-Appellee
P.O. Box 13342
Santurce, Puerto Rico 00908
(809) 724-1212

CERTIFICATE OF SERVICE

IT IS CERTIFIED that two copies of this brief and two copies of the supplemental appendix for defendant-appellee were mailed to A.J. Amadeo Murga, Esq., 1105 Banco Popular Center, Hato Rey, Puerto Rico, 00918.

At Santurce, Puerto Rico, September 24, 1982.

José E. Fernández Seín